I believe Mr. Jerger is counsel. How many minutes would you like to reserve, counsel? You may proceed when you're ready. I'm sorry, your counsel is not quite ready. I don't mean to rush you. Good morning. May it please the Court. Scott Jerger, representing plaintiff appellants. This case involves a challenge to the adequacy of a final environmental impact statement prepared by the U.S. Forest Service for the deep timber sale in the Oshkosh Forest. The threshold issue that I'd like to focus on, since we have so little time, is the cumulative effects analysis in the EIS. The reason this is a dispositive issue is because if this Court finds that the NEPA analysis is deficient, then that necessitates a remand to the agency to redo that analysis. Let me just start off by asking you, you obviously are aware of Lands Council v. McNair that was handed down on July 2nd. I'm familiar with that case. And I'm interested in knowing what your take is on the impact of that case's analysis of what I'll call Lands Council 1 is with respect to the issue that you're just raising. Absolutely, Your Honor. Well, in regards to Lands Council 1, we believe that this case is very, very similar to Lands Council 1 in that the FEIS contains no information whatsoever on past effects, for example, timber sales. It doesn't even list the past timber sales. In regards to Lands Council 2, Lands Council v. McNair, we believe that that case, or we believe that our position is completely consistent with the outcome of Lands Council v. McNair in that, in that case, what this Court was looking at was the issue of scientific uncertainty. And I believe the Court mentioned that they're not interested in getting in the business of becoming a panel of scientists to determine whether or not... that we were not mandating in that particular case an on-the-ground analysis or any other particular kind of analysis. We left it open to the Forest Service to indicate how it was going to prove its point, whatever the point might be. We indicated that we would find an abuse of discretion on the part of the Forest Service if, when analyzing what they do put forward, it was clear that there was simply no evidence to substantiate its position. Absolutely. That being the case, how does that impact your position? Sure. And I think the critical difference is, in this case, similar to Lands Council 1, the information's just not there. There's nothing to defer to. It's not there in the sense that it's not made a part of the EIS and the tiering requirement. Is that what you're talking about? Well, it's not even, not only is it not in the EIS, it's not in the administrative record. For example, there is no list of past timber sales in this particular watershed. That, of course, as the cases in this circuit indicate, is a starting point to analyze the cumulative effects of this project with those past projects. There's no list, there's no quantification or detailing of the environmental effects of those past actions, and there's no consideration at all of the interaction between the proposed project and these past projects. And the reason that's important is because the record is pretty clear that this watershed has been impacted pretty severely by past logging, for example. And it's in pretty bad shape, and that begs the question, why is this timber sale different than the past timber sales that brought the watershed to this impaired condition? And there is no answer in the administrative record. What's your position with regard to the guidance memorandum of the Council on Environmental Quality? The district court indicated that it was not to be considered. That particular memorandum indicated that the federal agencies need not analyze the effects of specific individual past actions when evaluating the cumulative effects of a proposed agency action. What effect, if any, does that body's memorandum have? Well, I think what that answer is, I think it has no effect on the particular case. And again, it goes back to the fact that there is no analysis at all in this record. And I think when you're looking, when you're talking about the CEQ guidance, what they're getting at there is aggregation. Can you aggregate past impacts and then look at the incremental effect of the present project vis-a-vis the aggregated past effects? But the problem here is there is no aggregation. And even if the forest, to aggregate, in other words, the first step of aggregating past impacts, you would have to identify the individual actions that you were aggregating or the inputs that you were putting into this aggregation analysis. And under the non-peering rule, it has to be in the EIR, right? Correct. So let's go for a moment then to what was shown that never got into the EIR but at least was outside. They did talk about past harvest there, did they not? Well, the only spot in the administrative record where they discuss past harvest is in the watershed analysis. And in there, they don't list individual sales, which is a requirement under Lands Council and KSWOW. What they do is they have a pretty general one-page discussion of the 34,000 acres that have been logged in the watershed. They discuss the method of treatment that was used without identifying the past sales. They discuss method of treatment, for example, this X number of acres was clear cut. And that's pretty much it. And our position is that is inconsistent with the first step of the Ninth Circuit law, which is at the very least the Forest Service is required to identify the time, type, place, and scale of these past timber sales. That's one of the reasons why I ask you about Lands Council. We'll call it Lands Council 2 versus McNair. You're suggesting that there's a particular way in which this information must be provided in terms of cataloging and so on. Isn't that one of the very things that Lands Council 2 left to the discretion of the Forest Service, how it was going to present the information? And we still have to evaluate whether what they give meets the abuse of discretion standard, but didn't Lands Council 2 do away with all of the requirement of charts and particular kinds of information? Well, I think one thing that I took away from Lands Council 2 is that it strongly reaffirms that the Forest Service must comply with NEPA. I don't have a question about that. But, again, what you've indicated here, and you're tied to Lands Council 1 and I think another case, was that you've got to present a chart, basically, and you've got to put this in the chart, you've got to put that in the chart, and so on. And that's what I'm saying. Didn't Lands Council 2 do away with the requirement that the data be presented in a particular way? Not that the data had to be presented, but that it be presented in a particular way. Sure. And we're not asking for cataloging, Past Timber Sales, for cataloging's sake or a specific type of chart. I think our point is, look, you know, we've got a watershed that's been fairly impacted here. These are some of the same activities that are proposed that are related to activities that caused some of the impacts to the watershed in the past. How you do it, agency, you've got a fair amount of discretion, but we at least need to know at some level what the impacts were of the past activities and how those impacts inform and how the public can comment and review on and understand how those impacts inform what is being proposed at this time. And in part, doesn't your argument go to the requirement that whatever is presented has to be in the EIS? You can tell I'm from California, it's the EIR. The EIS, because otherwise the public can't know what it's looking at to know what on which to comment, right? Exactly, and that's the foundation of NEPA, the idea that the public is entitled to review and comment on and help inform the proposed action. And I would like to mention, and I submitted a 28-J letter yesterday, but there have been, we discussed three cases in our briefing, KSWI versus BLM, Lands Council versus Powell, which we've just discussed, and ONRC versus BLM, those are three Ninth Circuit cases. Since the briefing has concluded, this Court has also issued three more decisions that inform and buttress the cumulative effects requirements that were originally stated in KSWI and Lands Council. I don't know that I need to give you the site now since I submitted the letter, but I just wanted to make you aware of that. Thank you. I'd just like to use my remaining time to touch on the public citizen case, because that's an issue that has come up in the past, and this Court has dealt with it as recently as two months ago, actually, in the Center for Biological Diversity versus Department of Transportation case, which is at 538 F3D 1172. The Forest Service argues in their briefing that the holding of public citizen, the Department of Transportation versus public citizen, which is a Supreme Court case from 2004, that the holding of public citizen allows the Forest Service to aggregate the impacts, past impacts, and then just look at the incremental impact of the proposed action. Our position is that that's not at all the holding of public citizen. Public citizen involved the Federal Motor Carrier Safety Administration's NEPA analysis, and what they were looking at was the effect of Mexican trucks entering the United States and what environmental impact that would have on air emissions. And what the specific issue in that case was, is what the Federal Motor Carrier Safety Administration doing, a major federal action significantly affecting the quality of the human environment? What the Supreme Court held was, since this agency had no statutory authority to regulate emissions from Mexican trucks, that no, they did not have to look at those emissions to determine whether or not this was a major federal action significantly affecting the quality of the human environment. There is a paragraph in there that talks about cumulative effects, but it doesn't discuss the adequacy of a cumulative effects analysis in relation to aggregating. And what this Court has held numerous times in the Center for Biological Diversity case as well as ONRC versus is that that case is inapposite in a case like this one where the Forest Service clearly has the authority to regulate, obviously was in charge of the past timber sales, and is in charge of the proposed action. Very good. Do you want to save the remainder of your time for the government? I would like to do that. Great. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Steve O'Dell. I'm with the U.S. Marine's Office here in Portland. I'm representing the United States Forest Service. There are three fundamental flaws with the appellant's argument, and I believe, Judge Smith, you touched on several of them in your questioning of appellant's counsel already. The first is that essentially for purposes of NEPA, the appellants would have you believe that all timber sale projects are the same, and, in fact, to a certain extent all projects are the same for purposes of compliance with NEPA. And certainly when it comes to the previous kinds of timber sale projects in this particular watershed, the appellants are trying to lead this Court into believing that the deep project is no different from what has come before. Can we go to a point that I'm concerned about in terms of your position? Yes, please. Our case law is pretty clear. I'm looking for, among other things, to Muckleshoot Indian Tribe versus U.S. Forest Service and so on, that you can't hear information except to another environmental impact report. However one looks at the Forest Service's presentation, is it not clear that what little information you provided about past timber harvest was not all included in the EIS? Yes, Your Honor, but may I clarify, or did you want to continue? Well, I just want to know how that complies with 40 CFR 1508.28. Well, I want to be clear on that because the Forest Service here did not tier to the watershed analysis. And yet, that's not the only means by which an agency can properly rely on information outside the EIS. Well, not the agency, it's the public. The public ought to be able to look at an EIS and say, okay, this is the universe of information that discusses this process that we're going through. We need to be able to take a look at it, analyze it, and so on. If it's not in there, our case law and the regulations say, if you have to refer to something outside, it's tiering and it doesn't comply. Isn't that right? To an extent, Your Honor, yes. However, this Court has also recognized that it is appropriate to incorporate, by reference, in fact the CEQ regulations also allow for that because the CEQ regulations that implement NEPA make it clear that another major objective of NEPA is to reduce paperwork. Now, the watershed analysis that was conducted for the Deep Creek watershed on which the EIS... Can you give me a site of a case or a regulation that permits incorporation by reference to anything other than another environmental impact report? Yes, Your Honor. A statement, rather. 40 CFR 1502.21. So you're saying that that allows incorporation by reference to something other than an EIS? Correct, Your Honor, because otherwise... I mean, this EIS obviously is not a short document. EISs have gotten increasingly large partly because the level of sophistication of the specialists within the agencies has grown, but also with all due respect, some of the case law from the Court has suggested that the burden in order to comply with the procedural and analytical requirements of the Natural Resource and Environmental Statutes has tended to increase over time. I'm shocked you'd say that. Again, I say that with all due respect. And in light of what Your Honor had suggested himself in the Lands Council, too, opinion, that perhaps there might have been a little bit of veering off course on some of those earlier opinions. Maybe so. So having said that, I also want to make clear that the watershed analysis in this case is particularly important because of another salient fact that the appellants do not take note of, and that is that in the mid-1990s there was a significant change in planning direction on the east side of the Cascade Mountain Range here in Oregon. And there were two particular amendments that were adopted by the Forest Service. The first was the east side screens that we discussed in our briefs. In fact, one of those is at issue in terms of the NFMA compliance issue raised in the appeal. The second was the Inland Native Fish Strategy, or NFISH, which is not directly relevant. But it's indirectly relevant because those revised planning directions advised the Forest Service to take a new approach to laying out projects. And what they said is, instead of starting with the proposition that we're going to look for a project to implement, we're going to take a step back and evaluate a watershed as a whole. And, in fact, that's required under the new direction. And that's exactly what the Forest Service did here. It looked at the Deep Creek Watershed and it said, okay, as the appellant suggests, this watershed has suffered from some of our previous management activities, and here's why. And here are what the effects of those are to the current day. And then it goes on in subsequent chapters as we lay it out in our answering brief and says, here is what we would recommend in terms of actions to help improve the quality of the health of this watershed, to put the stands, the tree stands, and the vegetation structure within the watershed, more within the historic range of variability, which is a desired policy objective of the Forest Service. And on that basis, then, the Forest Service then gleaned the purpose and need for this particular project, directly out of the watershed analysis. So, again, it wasn't as though they started out and said, let's have a timber sale. And, in fact, let's go in with a clear cut because our main objective here is to maximize some sort of timber production. In fact, it was just the opposite. The timber production here is more of an outcome, and the commercial thinning that is occurring as a result of this project is a means to accomplish the vegetation management purpose and need of the DEEP project. And so I want to be clear on that. If you go back to the cases that Mr. Jerger cited in his brief and this morning as well, which include Lands Council 1 and Klamath-Siskiwe Island Center, and they do talk about cataloging, there are a couple of qualifiers that seem to get lost sometimes in some of those references or descriptions of the cases, and that basically say effectively that the past actions that need to be specifically addressed are the relevant past actions, and that the analysis of particularized effects of previous individual actions needs to somehow be useful to the ultimate decision and a reasoned choice among alternatives. Well, here, because this particular project represents such a fundamental departure from all of the previous activity that has occurred in this watershed, with one exception. What case or cases would you cite for your proposition that all that needs to be cited in the past actions are the material or relevant actions? Okay. I would cite two. First of all, I would cite, in fact, to the Lands Council 1 decision itself, 395F3 at page 1027. I would also cite to the Muckleshoot case, 177F3, 809 and 10. And... At what again? I'm sorry. The pinpoint on Muckleshoot, pages 809 and 810. Okay. And I had one other case recently where, yes, National Environmental Advocates at 460F3 at page 1140. There's discussion of the meaning of Lands Council 1. It doesn't necessarily go to the question of the relevance, but it does lend support to the view that there is a qualifier and that, as you suggested, I believe, earlier, Your Honor, this cataloging issue is not a mandate per se rule that applies in every case. What is the government's position with respect to the CEQ guidance memorandum? How does that fit into an analysis of past relevant actions? Well, I think as you suggested in your question of Appellant's counsel earlier, Your Honor, that suggests, and we think appropriately so, that the relevant inquiry, again, should be based upon the potential usefulness or meaningfulness of the information at issue. Your view is that all that memorandum does, in effect, is to incorporate how you view portions of Lands Council 1, Muckleshoot, and other cases that it's just the relevant past information. So if you had, say, ten previous harvests of some type that created damage, but that it had resolved itself into a particular current situation that could be described in a gross as opposed to a subpart fashion, that you think that meets the requirements of these cases? Yes, I do, Your Honor. I do for a couple of reasons. First of all, I would look to the language of the cumulative impact regulation itself, and I think this segues very nicely from the point that you made in Lands Council 2, which is this Court does not have the authority to impose on an agency a particular methodology or procedure for analyzing any particular compliance issue unless it stems directly from the language in the statute of the regulation. Let me just grab my CEQ regulations very quickly. If we look at 40 CFR Section 1508.7, I think it's very clear here that cumulative impact is defined as the impact on the environment which results from the incremental impact of the action, in other words, the proposed action. So the only action with respect to which the incremental impact by the end to the regulation has to be evaluated is the proposed action. When added to other past, present, and reasonably foreseeable future actions. So the appellant's position effectively would have the regulation read the incremental impact of the action and the incremental impacts of all of the individual past, present, and reasonably foreseeable actions. So I would point to that. I would point to public citizen as well. And with all due respect to Appellant's counsel, I think that, first of all, it's a crabbed reading of a Supreme Court opinion, which I think ordinarily ought to be discouraged, of course, because the Supreme Court often speaks with a broad breast. Kennedy. I'd like to say in accruendle that I agree with him about public citizen. Where does that leave you in terms of your analysis? Do you still get back to the CFR that you talked about there and the other cases that you cited? Yes. And also, if I might, Your Honor, the other one of the other flaws that I haven't had a chance to get to yet is this Court's case law on cumulative impact analysis is far from monolithic. I mean, we have talked about Lands Council 1. We have talked about KSWC. But there are many other cases. You don't think of monolithic when you think of the Ninth Circuit? Maybe particularly in this area. But I'm glad you said that first and not myself. That's a question. That's a question. And there is a recent case, Bearing Strait Citizens for Responsible Resource Development, 524 F. 3rd, 1938, upheld in EA where there wasn't a cataloging of past activities. We cited in our brief to the Biscuit Salvage Timber Sale where there was a similar upholding of a cumulative impact analysis that did not go into that level of detail. Northwest Environmental Advocates that I already mentioned. And there's an EPIC case as well. These are cited in our brief. These are in your brief, are they not? Yes, they are. I just wanted to make the point and remind the Court that our position is not that you have to read Lands Council 1 or Klamasiski-Wyland Center out of your precedent, but with all respect, to take a broader view and view the whole tapestry of all these cases. And what it comes down to is what I think is totally consistent with Lands Council 2. We need to take these cases on their facts individually and not try to come up with some sort of bright-line categorical rule that the appellants would like you to adopt. And with respect to their position, we think would totally be contradictory to the holding of McNair, which says that this Court is no longer going to do that. It's going to defer to the agency. Here, in fact, I would venture to say that the approach that the Forest Service took was not only allowed by the regulation I read earlier, which defines committive impact, it actually was preferable. Think about it for a minute, if you would, Your Honor. The Forest Service could have cataloged all of these past timber sales from 20, 30 years ago that were adopted and developed under a totally different set of planning direction and which bear very little resemblance to the project that they were actually considering. And yet what they did instead was they took the current condition of the watershed, which actually is designed to look at what the current ongoing impacts of that past activity might be for purposes of deciding how is that relevant to how do we improve the conditions in the watershed. Again, I venture to say that's clearly a much more useful technique and one that should be deferred to in light of Lands Council 2. Did Your Honors have any questions about the NFMA claims? I see I have 30 seconds left. I guess we believe that the Lands Council 2 decision is highly relevant to Your Honors' determination of the claims here and that deference to the manner in which the Forest Service carried out its committive effects analysis in this case is called for. Thank you. Thank you. Mr. Jerger. Thank you, Your Honor. Three quick points. The incremental impact of the proposed action, how do you determine that? How do you determine the incremental impact of the thousandth cut? You can't do that in a vacuum. You'd have to know what the impact was of the previous 999 cuts. I realize that we've said that the Forest Service determines how it's going to present that, but from your perspective, what would be involved in a meaningful analysis of the past? You've heard your opposing counsel just indicating that those actions were taken under different legal regime, different standards. They can tell you where the current situation is based upon what's happened there before. Why isn't that enough if the standard is the relevant current status of the project? Sure, because we don't know from the record what is and isn't relevant, and that's precisely the point. It's just not in there. And the concrete example I think that I'd like to use is, for example, we know red band trout exist in the project area and they are not in a healthy state. We also know that there's going to be some short-term sediment loading impacts to the watershed, which negatively affect red band trout. So given that we know that, what do we need to know about past timber sales? Well, we know that those past timber sales probably caused some erosion and they probably built some roads to get in there, and we would need to know at least at some level, and again, it's not in there at all, some quantification or objective assessment of the sediment loading that was caused by either the erosion and the road building from past timber sales. At that point, you could look at this incremental increase in sediment loading and say, just like this court said in K.S. Wild, is this incremental impact, even though it might be small, is this the one that tips the watershed over the brink? And we just don't know. We're almost out of time. Thank you both for a fine argument. This is an important case, and we appreciate your preparation. The case just argued will be deemed submitted, and we will now hear the last case of the day, Oregon Natural Desert Association v. Gutierrez. Mr. Penick, I presume, right? Yes, Your Honor. I'll wait for your co-counsel here to take their seats. Don't take your time. Don't hurry. How much time would you like to reserve? Two minutes for rebuttal, Your Honor. Very good. You may proceed, Mr. Penick.
judges: Thompson, Tashima, Smith